# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE BELL | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 2783 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| LOYOLA UNIVERSITY MEDICAL CENTER, | ) | |
| STEPHANIE KENDZIOR, | ) | |
| and MICHELLE HARNELL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephanie Bell has sued Loyola University Medical Center ("Loyola") for terminating her employment and imposing other adverse employment conditions on the basis of her race (Count I), maintaining a hostile work environment (Count III), and retaliation (Count IV), all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Bell also brings interference and retaliation claims against Loyola under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a) (Count IV). In addition, Bell brings claims against Loyola employees Stephanie Kendzior and Michelle Harnell individually under 42 U.S.C. § 1981 for retaliation (Count II) and race discrimination (Count V).

Defendants move to dismiss certain claims in Counts I through IV pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, Defendants' motion to dismiss is granted in part and denied in part.

**Factual Background[1]**

Plaintiff Stephanie Bell is an African-American woman[2] who worked as a Certified Medical Assistant for Loyola beginning in June 2013. 3d Am. Compl. ¶ 9, ECF No. 60. In September 2013, Bell met with Defendants Stephanie Kendzior, the Clinical Coordinator and Supervisor at Loyola, and Michelle Harnell, the Administrative Director at Loyola, for her 90-day employment review. *Id.* ¶¶ 5–6, 11. At the review, Kendzior and Harnell reprimanded Bell for excessive tardiness. 1st Am. Compl., Ex. 3, Performance Review of 9/13/2013 at 1, ECF No. 17-3;[3] *see* 3d Am. Compl. ¶ 11.

On August 20, 2013, Bell met with Loyola's Human Resources Director, Rick Bacci, to discuss what Bell characterizes as Kendzior and Harnell's "seemingly discriminatory assessment" of Bell's log-in times, which Bell believed misrepresented her actual log-in times. 3d Am. Compl. ¶¶ 12–13. After the meeting, Bacci informed Bell that Kendzior "had made a few inadvertent errors" in documenting Bell's log-in times and that Bell had in fact logged in too early on several instances when Kendzior had documented Bell's log-in time as late. 1st Am. Compl., Ex. 4, Richard Bacci Letter of 10/31/2013 at 2, ECF No. 17-4; *see* 3d Am. Compl. ¶ 12. Nevertheless, following Bell's meeting with Bacci and continuing through December of 2013, Kendzior and Harnell "persistently harassed" and "micro-managed" Bell with respect to her log-in practices. 3d Am. Compl. ¶ 14.

---

[1] The following facts are taken from Bell's Third Amended Complaint and are accepted as true on review of Defendants' motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

[2] Bell self-identifies as a "Hebrew Israelite American . . . (so-called Black African American Negro)." Pl.'s Resp. at 2, ECF No. 69; *see* 3d Am. Compl. ¶ 4, ECF No. 60.

[3] Bell's Third Amended Complaint states that it incorporates by reference a number of documents which were attached to her First Amended Complaint, but does not attach them. *See, e.g.,* 3d Am. Compl. ¶ 11. These documents include the performance review, among others.

In the summer of 2014, Bell applied for and received FMLA leave, from which she returned on September 6, 2014. *Id.* ¶¶ 15–18. Bell alleges that, during her leave, she did not receive all of the health care benefits to which she was entitled under the FMLA. *Id.* ¶ 18.

Soon after returning from FMLA leave, on September 16, 2014, Bell and Kendzior had an argument, during which Kendzior accused Bell of lying about her log-in times. *Id.* ¶ 19. On September 22, 2014, Bell met with Kendzior and Harnell, who again accused Bell of lying about her log-in times. *Id.* ¶ 21. The next day, Bell filed a formal complaint regarding this incident. *Id.* ¶ 23. A week later, on September 29, 2014, Loyola terminated Bell's employment on the purported basis that she had falsified an unspecified document. *Id.* ¶ 25.

In November 2014, Bell filed a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR"), alleging that she had been terminated because of her race. 1st Am. Compl., Ex. 1, IDHR Charge of 11/5/2014 ("IDHR Charge"), ECF No. 17-1; 3d Am. Compl. ¶ 2. On August 8, 2016, Bell received a right-to-sue letter from the IDHR, explaining that, to pursue her complaint, she must file a lawsuit with the appropriate state circuit court within 90 days. 1st Am. Compl., Ex. 2, IDHR Dismissal and Notice of Rights Letter of 8/8/2016, ECF No. 17-2; 3d Am. Compl. ¶ 2. Bell then filed a lawsuit in Illinois state court on September 8, 2016. 3d Am. Compl. ¶ 2. Defendants removed the suit to this Court on April 12, 2017. *Id.*

Based on the foregoing events, Bell claims that Loyola falsely accused her of falsifying a document, wrongfully terminated her employment, and denied her the right to appeal her termination because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count I). 3d Am. Compl. ¶¶ 37–39. Bell also claims that Loyola, acting through its employees Kendzior and Harnell, harassed her, subjected her to a hostile workplace environment, and terminated her in retaliation for filing formal complaints, also in violation of

3

Title VII (Count III). *Id.* ¶¶ 45–47.[4] Bell further claims that Loyola violated both Title VII and the FMLA, 29 U.S.C. § 2615(a)(2), by retaliating against her for taking FMLA leave when it wrongfully terminated her employment and did not allow her to appeal her termination (Count IV). 3d Am. Compl. ¶¶ 50–51. In the same count, Bell claims that Loyola also violated § 2615(a)(1) of the FMLA, by providing her with fewer benefits than she was entitled. 3d Am. Compl. ¶¶ 50–51. Lastly, Bell claims that, in violation of 42 U.S.C. § 1981, Kendzior and Harnell falsely accused Bell of falsifying a document in order to terminate her in retaliation for filing formal complaints of racial discrimination (Count II). 3d Am. Compl. ¶¶ 41–43.

**Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint "need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo*, 526 F.3d at 1081; *see also* Fed. R. Civ. P. 8(a)(2). In reviewing a motion to dismiss, a court must accept as true all well-pleaded allegations in the complaint and must draw inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081.

Moreover, a reviewing court may consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to

---

[4] Count I could also be reasonably construed as asserting a Title VII retaliation claim as well as FMLA retaliation and interference claims, *id.* ¶¶ 37–39, but the Court will address the former in its discussion of Count III and the latter in its discussion of Count IV.

4

proper judicial notice." *Geinosky v. City of Chi.*, 675 F.3d 743, 745–46 n.1 (7th Cir. 2012). For example, a court "may . . . take judicial notice of matters of public record." *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir. 1994).

## Analysis

I.     **Title VII Claims (Counts I, III, and IV)**

Defendants seek dismissal of Bell's Title VII claims because she fails to allege that her IDHR Charge was cross-filed with the EEOC or that she received a right-to-sue letter from the EEOC. Defs.' Mem. Supp. Mot. Dismiss ("Mem. Supp.") at 6, ECF No. 64; *see id.*, Ex. B, EEOC Dismissal and Notice of Rights Letter of 11/25/14 ("EEOC Notice"), ECF No. 64-2. In addition, Defendants contend that Bell filed suit nearly two years after receiving the EEOC Notice, well outside the 90-day filing window. Mem. Supp. at 6. In response, Bell contends that Defendants' argument raises an affirmative defense, inappropriate for resolution on a motion to dismiss. Pl.'s Resp. at 12, ECF No. 69. Moreover, Bell contends that she filed this lawsuit within 90 days of receiving a right-to-sue letter from the IDHR in August 2016. *Id.* at 13.

To bring claims under Title VII, a plaintiff "must exhaust [her] administrative remedies," meaning that Bell needed to "comply with the relevant preconditions to bringing a lawsuit." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013). One such precondition is that Bell was required to file suit within 90 days of receiving a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1). And, when a plaintiff receives an IDHR right-to-sue letter after an EEOC letter, this does not "reset the filing period triggered" by the EEOC letter. *Lewis v. Pretium Packaging, L.L.C.*, No. 14 C 6444, 2016 WL 3075267, at *2 (N.D. Ill. June 1, 2016).

Moreover, although an argument based on the statute of limitations raises an affirmative defense, a court may consider the argument on a motion to dismiss when it is apparent from the

pleadings and other documents which the court may properly consider that the action is time-barred. *See, e.g., U.S. v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

Here, Bell concedes that she filed this lawsuit on September 8, 2016, *see* Pl.'s Resp. at 3, and the Court may properly take judicial notice of her EEOC letter dated November 25, 2014—nearly two years before. *See* EEOC Notice; *see, e.g., Hopkins v. Kane County*, No. 5 C 3147, 2006 WL 560473, at *3 (N.D. Ill. March 2, 2006) (taking judicial notice of date of right-to-sue letter that the plaintiff did not attach to complaint). As such, it is apparent from the pleadings and the EEOC letter that Bell filed her suit outside of the 90-day filing window.[5]

Bell's argument that she timely filed this suit within 90 days of receiving the IDHR letter is unavailing. The Title VII filing window began upon receipt of the EEOC Notice in November of 2014, it ended 90 days later, and it was not reset upon receipt of the subsequent IDHR notice. *See Lewis*, 2016 WL 3075267, at *2. Defendants' motion to dismiss Bell's Title VII claims in Counts I, III, and IV is accordingly granted.

## II. Section 1981 Retaliation Claim (Count II)

Defendants also seek dismissal of Bell's retaliation claim under 42 U.S.C. § 1981. To state a retaliation claim under § 1981, a plaintiff must allege that she engaged in statutorily protected activity and suffered an adverse employment action. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013) (holding that, at the pleading stage, a Title VII plaintiff need state only these two elements of a retaliation claim); *Mintz v. Caterpillar, Inc.*, 788 F.3d 673, 679 (7th

---

[5] Defendants assert that Bell filed her lawsuit "more than 26 months" after receiving the EEOC Notice. Defs.' Mem. Supp. at 7. However, it appears that approximately 22 months elapsed from when Bell received the EEOC Notice, in November 2014, to when she filed this suit, in September 2016. Regardless, the period from the date of the EEOC Notice to the filing of this lawsuit certainly exceeded 90 days.

Cir. 2015) (stating that courts "apply the same standards to Title VII and § 1981 discrimination and retaliation claims").

Defendants argue that Bell fails to state a causal connection between Bell's formal complaints about race discrimination and her subsequent termination because she does not plead facts to suggest that Defendants knew about the complaints. Mem. Supp. at 8. But, even assuming, *arguendo*, that Defendants are correct, Bell is not required to allege the causal-connection element at the pleading stage. *See Luevano*, 722 F.3d at 1029. The City's motion to dismiss Count II is accordingly denied.

## III.   FMLA Interference and Retaliation Claims (Count IV)

Lastly, Defendants' motion does not address Bell's FMLA interference or retaliation claims. As to the former, Bell claims that she applied for, was granted, and took FMLA leave, but did not receive the full amount of FMLA benefits to which she was entitled. *See* 3d Am. Compl. ¶¶ 15–18. And as for retaliation, Bell claims that Loyola retaliated against her for taking FMLA leave by wrongfully terminating her employment and denying the right to appeal her termination. *Id*. ¶¶ 50–51. As Defendants have not addressed these claims, they have waived any argument in opposition for purposes of their motion to dismiss. *See FirstMerit Bank, N.A. v. Ferrari*, 71 F. Supp. 3d 751, 759 (N.D. Ill. 2014) (stating that party moving to dismiss had forfeited argument it did not make, for purposes of Rule 12(b)(6) motion) (citing *G & S Holdings LLC v. Cont'l Casualty Co.,* 697 F.3d 534, 538 (7th Cir. 2012)).

## Conclusion

For the reasons stated herein, Defendants' motion to dismiss [62] is granted in part and denied in part. Bell's Title VII claims in Counts I, III, and IV are dismissed with prejudice. Defendants' motion is denied with respect to Bell's § 1981 retaliation claim in Count II, as well as

her FMLA interference and retaliation claims in Counts I and IV. Bell's § 1981 retaliation claims remain against Stephanie Kendzior and Michelle Harnell, as do her FMLA interference and retaliation claims against Loyola.

**IT IS SO ORDERED.**          **ENTERED    8/23/18**

                                                     **John Z. Lee**
                                                     **United States District Judge**